## REASONABLENESS OF A RULE GOVERNING THE SLAUGHTER OF CHICKENS.

Circuit Court of Lorain County.

### R. H. SHUTE v. CITY OF ELYRIA.

Decided, April, 1912.

*Rule of Board of Health—Reasonable Rule—Slaughtering Chickens.*

1. A reasonable construction should be given to a rule of the board of health of a city, intended for the protection of the health of its inhabitants, to the end that it may be enforced.

2. One who dresses chickens in a room in the same building with his meat market and connected with it on the same floor, can be punished for the violation of a rule of the board of health providing: "No fowls or animals shall be kept confined, nor shall same be slaughtered or dressed in any basement or any building, a part of which is used and occupied as a market where meats are sold for food."

*Q. A. Gillmore,* for plaintiff in error.
*G. B. Findlay,* contra.

MARVIN, J.; WINCH, J., and NIMAN, J., concur.

The plaintiff in error was prosecuted before the mayor of the city of Elyria, and found guilty of violating Section 46, paragraph 29, of the rules and regulations of the board of health of said city. This regulation reads:

"No fowls or animals shall be kept, confined, nor shall same be slaughtered or dressed in any basement or any building, a part of which is used and occupied as a market where meats are sold for food."

It was shown upon the trial that Shute conducted a meat market in the city of Elyria, and that on the 28th of April, 1911, he slaughtered and dressed chickens in a room in the same building with his meat market and connected with such market and on the same floor with the room in which his meats were sold, the slaughtering, however, being done in a room back of the one in which meats were sold. The slaughtering and dressing would

appear to have been done with care, and the work conducted as cleanly as that kind of work can be done.

By proper proceedings, the case was brought into the court of common pleas on error, where this judgment of conviction was affirmed, and the case is now here upon proper proceedings seeking a reversal of the judgment of affirmance and the judgment in the mayor's court.

It is manifest that the accused violated this rule of the board of health, if the same is to be construed literally, and this question is presented in the case: "Had the board of health authority to establish this rule?" The statute which authorizes the establishment of the rule, if the board had the authority to establish it, is Section 4413 of the General Code of Ohio, which reads in part:

"The board of health of a municipality may make such orders and regulations as it deems necessary for its own government, for the public health, the prevention or restriction of disease, and the prevention, abatement or suppression of nuisances."

This, of course, does not authorize the board of health, arbitrarily, to establish a rule that is without reason, but it leaves in the board a very broad latitude in determining what is reasonable.

As said in *Walton* v. *Toledo*, 13 C. D., 547, quoting from the opinion of Judge Haynes at page 551:

"The powers that are given to the various boards of health, and the laws enacted for the purpose of protecting the people of the state from contagious diseases and from the sale of diseased or impure articles, are about as broad as language can make them. They extend into every relation of life, and the protection of health is one of the most important departments that the Legislature has to deal with."

We think that a rule which would make it an offense to do things done by the accused in this case, would be a reasonable rule to be adopted by the board of health.

Rules may be reasonable in one municipality which would not be reasonable in another, and in the absence of evidence showing the particular surroundings or the population or the character

of business buildings in a particular municipality, we must presume that if the regulation adopted by the board of health in any municipality could be reasonable in any municipality, then it is reasonable in the municipality in which it is adopted, for the presumption, in the absence of evidence, is that the rule of a board of health or an ordinance of a particular municipality is proper for such municipality, unless facts are shown to the contrary by proper evidence; so that, if the rule under consideration adopted by the board of health of Elyria would be suitable and proper, in short, would be reasonable in any municipality, we must treat it as reasonable in the city of Elyria, because we have no evidence in the record as to the character of the city of Elyria, its population or kind of buildings in the city, and of these facts we can not take judicial notice.

And this brings us to the consideration, therefore, of whether the particular rule under which the plaintiff in error was prosecuted is a reasonable rule.

It will be noticed that the language of the rule is very broad. It is made an offense to ''keep confined any fowl or animal,'' and it is also made an offense that ''any fowl or animal be slaughtered or dressed in any basement or building, any part of which is used and occupied as a market where meats are sold for food.'' If these words are to be construed in their broadest sense, it is manifest, we think, that the rule would be unreasonable. A building might be and often is, in a municipality, used in part as a grocery store, and in the upper stories and at a distance from the room used as a grocery store, are rooms occupied as a dwelling place by a family. In such grocery store salt meats, such as bacon, hams, pork and dried beef are sold for food.

The word ''animal'' is very comprehensive. Anderson's Law Dictionary gives as a first definition, ''Any irrational being as distinguished from man''; ''in a common sense, a quadruped, not a bird nor a fowl.'' Again: ''While the use in any particular context or statute may be limited by the general meaning and purpose, the term, in jurisprudence may include any living creature not human or rational.''

The word "fowl" is also very comprehensive, and the definition both in Webster's Dictionary and in the Century Dictionary, makes it include birds of all kinds, both domestic and wild, as the word "fowler" is used to mean the man who hunts birds.

If these broad definitions were to be applied to the construction of this rule, the family which should keep a canary bird in the living rooms hereinbefore spoken of as being in the same building with a grocery store where salt meats are sold, would be a violator of the rule; so, also, would the family keeping a parrot in such manner, or, indeed giving the word "animal" its broadest meaning, the keeping of a gold-fish in a glass globe by any such family would be a violation of the rule, and surely, the keeping of a pet squirrel in a cage would be a violation of the rule. But from the fact that both the words "fowls" and "animals" are used in the regulation under consideration, it is clear that the word "animal" was not used in its broadest sense. If it had been, there would have been no occasion to use the word "fowl" and the words following the prohibition as to the keeping of fowls or animals confined, to-wit, "nor shall the same be slaughtered or dressed in any basement or building," etc.; it would seem that a fair construction of the rule would be that the offense is committed when animals or fowls intended to be slaughtered are kept, as well as when such animals are slaughtered or dressed in such building, the offense is committed.

We think this is a reasonable construction of the rule, and if, upon any reasonable construction the rule can be upheld, it must be for the same reason that a statute must be upheld as constitutional, if by any reasonable construction of the statute it can be so held. We do not say that the construction suggested is the only one under which the rule could be upheld, but certainly with such construction it can be, and as such construction seems to be reasonable the result is that we hold the rule to be valid, and this necessarily results in our finding that the judgment should be and is affirmed.

It is suggested that if the attention of the board of health is called to the matter, the rule under consideration may be so amended as to relieve it from any possible misconstruction.